UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANDY DeJOIE, <br><br> Plaintiff, <br><br> v. <br><br> SALLIE MAE, INC.; and DOES 1-10, inclusive, <br><br> Defendants. | No. 5:13-cv-00437-MMB |

**MEMORANDUM OF LAW OF DEFENDANT, SALLIE MAE, INC.,
IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Defendant, Sallie Mae, Inc. ("Sallie Mae"), by and through its attorneys, Stradley Ronon Stevens & Young, LLP, hereby submits this Memorandum of Law in support of its Motion to Compel Arbitration and Stay Proceedings (the "Motion") pursuant to the unambiguous terms of the Arbitration Agreements that govern the dispute in the above-captioned action.

**I.      INTRODUCTION**

Sallie Mae seeks to compel Plaintiff, Sandy DeJoie, to submit her claims in this action to binding arbitration pursuant to the terms of the valid and enforceable Arbitration Agreements that she executed. Plaintiff's Telephone Consumer Protection Act ("TCPA") claim in this case arises from Sallie Mae's servicing of two student loans, the terms of which are memorialized in Promissory Notes that contain the applicable Arbitration Agreements. Because the Complaint asserts that Sallie Mae allegedly made unlawful telephone calls to Plaintiff in an effort to obtain repayment of those Promissory Notes, her claims fall squarely within the scope of the Arbitration Agreements and must therefore be submitted to binding arbitration.

The Promissory Notes contain conspicuous, valid, and binding Arbitration Agreements, pursuant to which "either party may elect to arbitrate – and require the other party to arbitrate" – any claim arising from or relating to the Promissory Notes.  The Arbitration Agreements further provide that notice of a party's election to arbitrate "may be given after a lawsuit has been filed and may be given in papers or motions in the lawsuit."  While Plaintiff had the right to reject the Arbitration Agreements contained in the Promissory Notes by submitting a rejection notice within 60 days after the date of the first loan disbursement, she did not do so.

Sallie Mae elects to arbitrate all claims asserted against it in this case.  Consistent with the explicit and enforceable language of the Arbitration Agreements, and the broad and emphatic federal policy in favor of arbitration, the Court should compel Plaintiff to submit her claims to binding arbitration and stay all proceedings in this action pending disposition of the claims in arbitration.

## II.	FACTUAL AND PROCEDURAL BACKGROUND

On September 19, 2008, Plaintiff executed a Signature Student Loan Application and Promissory Note ("Promissory Note 1").  (See Affidavit of Carl O. Cannon ("Cannon Aff."), ¶ 5, which is attached hereto as Exhibit 1, and Promissory Note 1, which is attached to the Affidavit as Exhibit A.)  The Signature student loan was disbursed on October 2, 2008, in the principal amount of $21,185.  (See id.)  Thereafter, on July 13, 2009, Plaintiff also executed a Smart Option Student Loan Application and Promissory Note ("Promissory Note 2").  (See Cannon Aff., ¶ 8, and Promissory Note 2, which is attached to the Affidavit as Exhibit B.)  The Smart Option student loan was disbursed on July 21, 2009, in the principal amount of $9,000.  (See id.)[1]

---

[1]   Promissory Notes 1 and 2 are collectively referred to as the "Promissory Notes."

The Promissory Notes each contain an Arbitration Agreement (collectively, the "Arbitration Agreements"). The Arbitration Agreement in Promissory Note 1 contains the following conspicuous, bold-faced header in all capital letters: "**ARBITRATION AGREEMENT**." (Promissory Note 1, § T (emphasis in original).) The Arbitration Agreement provides, in pertinent part:

> To the extent permitted under federal law, you and I agree that either party may elect to arbitrate – and require the other party to arbitrate – any Claim under the following terms and conditions. This Arbitration Agreement is part of the Signature Student Loan Promissory Note **("Note")**.
>
> 1. **RIGHT TO REJECT: I may reject this Arbitration Agreement by mailing a signed rejection notice to P.O. Box 147027 Gainesville FL, 32608 within 60 days after the date of my first disbursement. Any Rejection Notice must include my name, address, telephone number and loan or account number.**
>
> 2. **IMPORTANT WAIVERS: If you or I elect to arbitrate a Claim, you and I both waive the right to: (1) have a court or a jury decide the Claim…. Other rights are more limited in arbitration than in court or are not available in arbitration.**
>
> \*   \*   \*
>
> 3. **DEFINITIONS**: In this Arbitration Agreement, the following definitions will apply: **"I," "me"** and **"my"** mean each and every Borrower and Cosigner on the Note…. **"You," "your"** and **"yours"** mean the Lender; any other subsequent holder of this Note; Sallie Mae, Inc.; . . . all of their parents, wholly or majority owned subsidiaries and affiliates, any predecessors, successors and assigns of these entities . . . .
>
> \*   \*   \*
>
> 4. **"CLAIM"** means any legal claim, dispute or controversy between you and me that arises from or relates in any way to this Note, including . . . any dispute relating to: (1) the imposition or collection of principal, interest, attorneys' fees, collection costs or other fees or charges relating to this Note…. This includes, without limitation, disputes concerning the

3

> validity, enforceability, arbitrability or scope of this Arbitration Agreement or this Note; disputes involving alleged fraud or misrepresentation, breach of contract or fiduciary duty, negligence or other torts, or violation of statute, regulation or common law.  It includes disputes involving requests for injunctions or other equitable relief.
>
> \* \* \*
>
> 5. **STARTING AN ARBITRATION:**  To initiate an arbitration, you or I must give written notice of an election to arbitrate. This notice may be given after a lawsuit has been filed and may be given in papers or motions in the lawsuit.  If such a notice is given, the Claim shall be resolved by arbitration under this Arbitration Agreement and the applicable rules of the Administrator then in effect.
>
> \* \* \*
>
> 9. **GOVERNING LAW:**  This Arbitration Agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA, and not by any state law concerning arbitration.

(Promissory Note 1 (emphasis in original).)

The Arbitration Agreement in Promissory Note 2 also contains the same bold-faced header in all capital letters: "**ARBITRATION AGREEMENT**."  (Promissory Note 2, § T (emphasis in original).)  That Arbitration Agreement similarly provides, in pertinent part:

> To the extent permitted under federal law, you and I agree that either party may elect to arbitrate – and require the other party to arbitrate – any Claim under the following terms and conditions.  This Arbitration Agreement is part of the Sallie Mae Smart Option Student Loan Promissory Note **("Note")**.
>
> 1. **RIGHT TO REJECT: I may reject this Arbitration Agreement by mailing a signed rejection notice to P.O. Box 9480 Wilkes-Barre PA 18773-9480 within 60 days after the date of my first disbursement.  Any Rejection Notice must include my name, address, telephone number and loan or account number.**

2. **IMPORTANT WAIVERS:  If you or I elect to arbitrate a Claim, you and I both waive the right to: (1) have a court or a jury decide the Claim….  Other rights are more limited in arbitration than in court or are not available in arbitration.**

*   *   *

3. **DEFINITIONS**:  In this Arbitration Agreement, the following definitions will apply:  **"I," "me"** and **"my"** mean each and every Borrower and Cosigner on the Note….  **"You," "your"** and **"yours"** mean the Lender; any other subsequent holder of this Note; Sallie Mae, Inc.; all of their parents, wholly or majority owned subsidiaries and affiliates, any predecessors, successors and assigns of these entities . . . .

*   *   *

4. **"CLAIM"** means any legal claim, dispute or controversy between you and me that arises from or relates in any way to this Note, including . . . any dispute relating to: (1) the imposition or collection of principal, interest, attorneys' fees, collection costs or other fees or charges relating to this Note….  This includes, without limitation, disputes concerning the validity, enforceability, arbitrability or scope of this Arbitration Agreement or this Note; disputes involving alleged fraud or misrepresentation, breach of contract or fiduciary duty, negligence or other torts, or violation of statute, regulation or common law.  It includes disputes involving requests for injunctions, other equitable relief or declaratory relief.

*   *   *

If there is an arbitration agreement in place (a "Prior Arbitration Agreement") governing a prior promissory note to you (a "Prior Note"), "Claim" also includes all disputes relating to the Prior Note.  If I do not reject this Arbitration Agreement, any such Claim will be governed by this Arbitration Agreement rather than the Prior Arbitration Agreement.[2]

---

[2] Based on this provision, a "Claim" will be governed by terms of the Arbitration Agreement in Promissory Note 2 rather than the Arbitration Agreement in Promissory Note 1.  For purposes of the instant analysis, however, there is no material distinction between the two Arbitration Agreements.

\*      \*      \*

5. **STARTING AN ARBITRATION:** To initiate an arbitration, you or I must give written notice of an election to arbitrate. This notice may be given after a lawsuit has been filed and may be given in papers or motions in the lawsuit. If such a notice is given, the Claim shall be resolved by arbitration under this Arbitration Agreement and the applicable rules of the Administrator then in effect.

\*      \*      \*

9. **GOVERNING LAW:** This Arbitration Agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA, and not by any state law concerning arbitration.

(Promissory Note 2 (emphasis in original).)

Plaintiff entered into the Promissory Notes by electronically signing each. (See Cannon Aff., ¶¶ 5, 8.) Furthermore, Plaintiff did not send a notice of rejection with respect to either Arbitration Agreement within 60 days after the initial disbursements for the respective loans or, in fact, at any time. (See id., ¶¶ 7, 10.)

On January 24, 2013, Plaintiff commenced this action by filing her Complaint against Sallie Mae, a copy of which is attached hereto as Exhibit 3. In the Complaint, Plaintiff asserts a claim against Sallie Mae under the TCPA, 47 U.S.C. § 227, et seq., allegedly arising from what she terms "robocalls" with respect to her loans with Sallie Mae. (See Complaint ¶¶ 1, 7-14.)

Sallie Mae now elects to arbitrate the claims at issue in this action and, in accordance with the provisions of the Arbitration Agreements in the Promissory Notes, requests that the Court compel Plaintiff to submit her claims to binding arbitration.

### III.   ARGUMENT

#### A.   Legal Standard.

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; see Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.").  The United States Supreme Court has made clear that the FAA broadly applies to any transaction directly or indirectly affecting interstate commerce.  See, e.g., Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 277 (1995); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401 (1967).

The FAA promotes a "liberal federal policy favoring arbitration agreements," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."  Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983); see also Perry v. Thomas, 482 U.S. 483, 490 (1987) (stating that arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'") (citations omitted).  Indeed, the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"  AT&T Mobility, LLC v. Concepcion, 131 S. Ct. 1740, 1748 (2011) (citations omitted).

Simply put, the "overarching purpose of the FAA, evident in the text of §§ 2, 3 and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."  AT&T Mobility, 131 S. Ct. at 1748.  By consenting to bilateral arbitration, the "parties forgo the procedural rigor and appellate review of the courts in

order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 130 S. Ct. 1758, 1775 (2010). Ultimately, "[i]t falls to courts and arbitrators to give effect to these contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties." Stolt-Nielsen, 130 S. Ct. at 1774-75; EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002).

Section 3 of the FFA provides that when a court determines that "a suit or proceeding" is "referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, … shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 9. A motion to compel arbitration requires that only two questions be answered: (1) whether a valid agreement to arbitrate exists, and (2) whether the particular dispute falls within the scope of that agreement. Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005). If both of these factors are met, then the court must compel arbitration. Id. Further, it is well settled that the party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 92 (2000).

    **B.**    **The Court Must Compel Plaintiff to Submit Her Claims to Binding Arbitration.**

Plaintiff entered into the Promissory Notes, which conspicuously contained the Arbitration Agreements, and chose not to opt out of the Arbitration Agreements, despite having the right to do so. She is thus bound by the terms of the Arbitration Agreements. The Arbitration Agreements provide that, upon election by either party, any dispute arising from or

relating to the Promissory Notes is subject to arbitration.  Plaintiff's claims clearly relate to the Promissory Notes – specifically, her contention that Sallie Mae violated the TCPA in attempting to collect amounts owed under the Promissory Notes – and thus fall squarely within the scope of the Arbitration Agreements.  Accordingly, the Court must compel Plaintiff to submit her claims to binding arbitration.

First, it is beyond dispute that a valid agreement to arbitrate exists.  Plaintiff entered into the Arbitration Agreements with Sallie Mae when she signed the Promissory Notes.[3]  The Arbitration Agreements are conspicuously set forth in the Promissory Notes and are clearly marked with the emphasized heading "**ARBITRATION AGREEMENT**."  (Promissory Notes at § T.)  Moreover, while Plaintiff had the option of rejecting the Arbitration Agreements within 60 days of the first loan disbursements, she did not do so.  (See Cannon Aff., ¶¶ 7, 10.)   Put simply, Plaintiff freely entered into the Arbitration Agreements contained in the Promissory Notes and is bound by the terms thereof.  The Arbitration Agreements are valid and enforceable.  By their express terms, the Arbitration Agreements are governed by the FAA (see Promissory Notes at § T.9), and arbitration agreements governed by the FAA are presumed to be valid and enforceable.  See Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 226-27 (1987).  Plaintiff cannot demonstrate that the Arbitration Agreements are invalid or unenforceable in any respect.

Second, Plaintiff's claims fall squarely within the scope of the Arbitration Agreements, which are broad and require the arbitration of "*any* legal claim, dispute or controversy … *that arises from or relates in any way to this Note*, including . . . any dispute relating to: (1) the imposition or collection of principal, interest, attorneys' fees, collection costs or other fees or charges related to this Note . . . ."  (See Promissory Notes at § T.4 (emphasis added).)  The Arbitration Agreements also expressly include "disputes involving alleged . . .

---

[3]   The Promissory Notes bear Plaintiff's electronic signature.  (See Cannon Aff., ¶¶ 5, 8.)

9

violation of statute, regulation or common law." (Id.)  Where an arbitration clause is broad, as is the case here, there is a heightened presumption of arbitrability such that "'[in] the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" AT&T Tech., Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986) (citations omitted).  Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) (citations omitted).

   Here, Plaintiff's claims arise out of alleged telephone calls by Sallie Mae in connection with its efforts to collect the amounts owed by Plaintiff on the Promissory Notes.  Plaintiff contends that these alleged calls violated the TCPA.  Because Plaintiff's claims against Sallie Mae arise from alleged statutory violations relating to the Promissory Notes, the claims indisputably fall within the scope of the Arbitration Agreements.  Accordingly, the Court must compel arbitration of the claims.

# 1715971

## IV. CONCLUSION

For all the foregoing reasons, Defendant, Sallie Mae, Inc., respectfully requests that the Court grant its Motion and enter an Order in the form attached hereto, compelling Plaintiff to submit all claims in this action to binding arbitration, and staying all proceedings in this Court pending the disposition of Plaintiff's claims in arbitration.

Respectfully submitted,

 /s/ Joseph T. Kelleher
Eric M. Hurwitz
Joseph T. Kelleher
Stradley Ronon Stevens & Young, LLP
2005 Market Street, Suite 2600
Philadelphia, PA  19103
(215) 564-8000
(215) 564-8120 (fax)
ehurwitz@stradley.com
jkelleher@stradley.com

*Attorneys for Defendant,*
*Sallie Mae, Inc.*

Dated: April 16, 2013